UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTOPHER J. RYAN, as the Liquidation Agent for the Class 7 Claimants of the Confirmed Chapter 11 Plan of Reorganization of Couba Operating Company,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN NATURAL ENERGY CORPORATION, an Oklahoma Corporation,<br><br>    Defendant. | Case Number:  O6-CV-022-TCK-SAJ |

## OPINION AND ORDER

Before the Court is the Motion of Defendant American Natural Energy Corporation for Attorneys' Fees (Doc. 96). For reasons set forth herein, this motion is denied.

**I. Factual Background**

The above-styled case was tried to the Court without a jury on February 8, 2007. On November 30, 2007, the Court entered Findings of Fact and Conclusions of Law ("Findings") in accordance with Federal Rule of Civil Procedure 52 (Doc. 92). The following facts are relevant to the motion before the Court. Couba Operating Company ("Couba") filed Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Oklahoma (the "Bankruptcy Case"). Plaintiff Christopher Ryan ("Ryan") is the Liquidation Agent for the Class 7 creditors ("Class 7 Creditors") in the Bankruptcy Case. As a result of settlement negotiations in the Bankruptcy Case, Couba agreed to assign two oil and gas leases ("Leases") located on several hundred acres in St. Parish, Louisiana, to American Natural Energy Corporation ("ANEC"), the

1

Defendant in this lawsuit. As a further result of settlement negotiations in the Bankruptcy Case, ANEC agreed to convey certain interests in the Leases to Class 7 Creditors. Specifically, ANEC agreed to convey an overriding royalty interest ("ORI") and a net profits interest ("NPI") in the Leases to Class 7 Creditors.

On November 16, 2001, the Bankruptcy Court entered an Order Confirming Plan, which confirmed the Second Amended Joint Plan of Reorganization Proposed by Couba Operating Company, American Natural Energy Corporation, and Gothic Resources, Inc. (the "Plan"). The Plan memorialized the settlement negotiations in the Bankruptcy Case. As contemplated by the Plan, Couba assigned the Leases to ANEC. As further contemplated by the Plan, on December 28, 2001, ANEC executed a Conveyance of Net Profits Interest ("Conveyance of NPI"), whereby ANEC conveyed to Class 7 Creditors a NPI in the Leases. On the same date, ANEC executed a Conveyance of Overriding Royalty Interests ("Conveyance of ORI"), whereby ANEC conveyed to Class 7 Creditors an ORI in the oil and gas produced on the Leases.

Ryan brought this lawsuit to recover amounts due and owing from ANEC to Class 7 Creditors pursuant to the Conveyance of NPI and Conveyance of ORI. Prior to trial, Ryan and ANEC resolved their dispute regarding the Conveyance of ORI, and the Court entered an Agreed Judgment in favor of Ryan. At trial, Ryan sought $1,424,766.41 of unpaid net profits that were allegedly due and owing pursuant to the Conveyance of NPI. The determination of whether Ryan, on behalf of Class 7 Creditors, was entitled to judgment in his favor in such amount turned on interpretation of various written documents executed by the parties at the time of negotiating settlement in the Bankruptcy Case. Ultimately, the Court rejected Ryan's interpretation of such documents, agreed with ANEC's interpretation of such documents, and determined that ANEC did

not owe Ryan any amounts pursuant to the Conveyance of NPI. On December 19, 2007, ANEC moved the Court for an award of attorney fees pursuant to Title 12, Section 936 of the Oklahoma Statutes.[1]

## II.     Award of Fees Pursuant to Title 12, Section 936 of the Oklahoma Statutes

Title 12, Section 936 of the Oklahoma Statutes provides:

> In any civil action to recover for labor or services rendered, or on an *open account*, a statement of account, *account stated*, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

Okla. Stat. tit. 12, § 936 (emphasis added) ("§ 936"). ANEC argues that this lawsuit qualifies as a civil action to recover on an "open account," or, alternatively, an "account stated." The Court's task is to determine if the "underlying nature of the cause of action" is one to recover on an open account or an account stated, as those terms are defined by Oklahoma law. *See State of Okla. ex rel. State Ins. Fund v. Great Plains Care Center*, 78 P.3d 83, 86 (Okla. 2003) ("The underlying nature of the cause of action determines the applicability of § 936.").

### A.     Open Account

An "open account" is defined under Oklahoma law as an "'unsettled debt arising from items of work and labor, goods sold and delivered, and other open transactions not reduced to writing, and subject to future settlement and adjustment.'" *Whitson v. Wetherbee Elec. Co.*, 416 P.2d 888, 891 (Okla. 1966) (quoting *Checotah Hardware Co. v. Housel*, 35 P.2d 966 (Okla. 1934)); *see also Nicholson v. Thixton*, 448 P.2d 454, 455 (Okla. 1968). A party seeking fees pursuant to the "open

---

[1] The Findings set forth more detailed facts, the issues presented at trial, and the Court's factual and legal conclusions, and they are incorporated herein by reference.

account" language of § 936 must "at least" show the following: (1) there exists an account "based upon running or concurrent dealings; (2) these dealings have not been closed, settled or stated; (3) some term of the contract remains to be settled between parties, or the agreement contemplates further transactions between the parties." *Great Plains Care Center*, 78 P.3d at 87 (quotation omitted). In addition to these three requirements, Oklahoma courts have instructed that, as a general rule, "'[a]n express contract, which defines the duties and liabilities of the parties, whether it be oral or written, is not . . . an open account.'" *Id.* at 88 (quoting *Globe & Repub. Ins. Co. of Am. v. Indep. Trucking Co.*, 387 P.2d 644 (Okla. 1963)). A classic example of an "open account" is the sale of goods without an express agreement on the price. *See Great Plains Care Center*, 78 P.3d at 88 n.7.[2]

In relevant part, Ryan's Complaint alleged:

> ANEC is indebted to [Ryan] in an amount which exceeds $215,000.00 for oil and gas overriding royalty interest payments from the production period beginning on or about December 1, 2004 to the present. To date, ANEC has never paid [Ryan] any amount under the terms of the net profits interest conveyance, but the Liquidation Agent believes funds are due and owing to [Ryan] under the terms of that conveyance.

(Compl. ¶¶ 7-8.) Ryan sought the following relief: (1) money judgment against ANEC for all amounts owed pursuant to the Conveyance of NPI; (2) an accounting from ANEC of all amounts owed pursuant to the Conveyance of NPI; (3) other equitable relief such as ordering ANEC to execute and deliver amended division orders to oil and gas purchasers. (Compl. Prayer for Relief.) ANEC argues that Ryan sought to recover on an "open account" because (1) the Conveyance of NPI

---

[2] At least one secondary source describes an "open account" as "similar to a line of credit," whereby "the parties intend that the individual transactions in the account be considered as a connected series . . . subject to a shifting balance as additional debits and credits are made, until one of the parties wishes to settle and close the account." 1 Am. Jur. 2d *Accounts and Accounting* § 4.

contemplated that ANEC create and keep accounts to track direct costs, net proceeds, and net profits, (2) ANEC was obligated to provide detailed statements showing proceeds, direct costs, credits, and debits for production periods, and (3) the transactions contemplated by the Conveyance of NPI was ongoing and contemplated further transactions between the parties.

The Court finds that Ryan's action to recover unpaid amounts due and owing on the Conveyance of NPI is not an action to recover on an "open account." First, the Conveyance of NPI does not fit the common law definition of an "open account." It is an express written agreement that sets (1) the amount of the net profits interest for each type of well, (2) the formula used for calculating net profits for each well, and (3) the dates on which net profits payments are due. There was no term of the parties' agreement that was merely "implied" or that was left open for future negotiation. *See Great Plains Care Center*, 78 P.3d at 88 (explaining that if the obligation enforced arises from an "express contract" that clearly defines the duties of the parties, it is generally not an open account). Instead, upon execution of the Conveyance of the NPI, the dealings between the parties were "closed, settled, and stated," in that the terms of their agreement were fully negotiated and memorialized. Although the parties' relationship was ongoing in that net profits (if earned) were to be paid in the future, this does not mean the account is "open" for purposes of § 936. *See id.* at 87-88 (rejecting argument that every contract becomes an open account "when the parties have agreed to multiple payments to satisfy a contractually agreed indebtedness"). In addition, although the precise amount due was contingent on future events, *i.e.*, the direct costs actually incurred and net profits actually earned, the formula setting the amount due was a specific term of the agreement, which counsels against a finding of an "open account." *See id.* at 88 (reasoning that contract was not open account because, *inter alia*, the "formula for the amount that is due does not change for a

definite policy period, and that formula is part of the contract"); *see also Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1092 (10th Cir. 1980) (applying Oklahoma law) (reasoning that a contract was not an open account because "[t]he only term ever left open was the exact amount due, but this figure was based on a fixed percentage").

Second, ANEC did not cite, and the Court did not locate, any case awarding attorney fees pursuant to the "open account" provision of § 936 in a case involving an unpaid balance on a conveyance of net profits or other similar future interest.[3] To the contrary, cases addressing contracts most similar to the Conveyance of NPI have held that such contracts are not "open accounts" for purposes of § 936. *See, e.g., J.B. Bickford v. John E. Mitchell Co.*, 595 F.2d 540, 545 (10th Cir. 1979) (applying Oklahoma law) (holding that action to recover unpaid royalty amounts pursuant to a written contract was not an action on an open account) (primary issue at trial involved contract interpretation of whether royalties were being properly calculated); *Paramount Pictures Corp.*, 621 F.2d at 1092 (applying Oklahoma law) (holding that action by motion picture distributors against theater owner to recover percentage of gross receipts, pursuant to rental agreements governing rental of the motion pictures, was not an action on an open account); *Boyles Galvanizing & Planting Co. v. Hartford Accident & Indemnity Co.*, 372 F.2d 310, 314 (10th Cir. 1967) (applying Oklahoma law) (holding that action to recover on contract for stipulated payment schedule was not open account). *Cf. Kay v. Venezuelan Sun Oil Co.*, 806 P.2d at 652 (noting that assignment of an overriding royalty interest, which is similar to assignment of a net profits interest, "is not one of the

---

[3] In fact, the Court was unable to locate *any* Oklahoma case awarding attorney fees pursuant to the "open account" provision of § 936. *See generally* Okla. Stat. tit. 12, § 936 annotation note 8 (listing eleven cases addressing "open account" language in § 936) (all holding that lawsuit did not qualify as one to recover on an "open account").

6

contracts enumerated in § 936").

Finally, where the essential terms of the underlying source of the obligation are express and set, as in this case, the nature of the cause of action is generally not one to recover on an open account. *See, e.g., Great Plains Care Center*, 78 P.3d at 88 (holding that action for unpaid insurance premiums was not action on open account because there was a contractually specified policy period, a contractually specified premium, and a contractually specified due date of the premium); *Nicholson*, 448 P.2d at 455-56 (holding that oral contract of employment was not open account because no term of the contract "remained open to future adjustment, and no transaction remained open"); *Whitson*, 416 P.2d at 890 (holding that an oral contract whereby defendant agreed to pay plaintiff on a "time material basis" plus a percentage of profit was not an open account); *Sanditen v. Brooks Flame-Spray, Inc.*, 403 P.2d 471, 474 (Okla. 1965) (holding that oral contract for merchandise sold and delivered was not an open account because it was a complete transaction and there was "nothing left open for additional connected services or sale of goods"). Therefore, the nature of the cause of action in this case was not one to recover on an "open account" for purposes of § 936. Instead, the case was to recover on an express conveyance of a net profits interest, which set forth specific payment requirements and the formula used to calculate such payments.

### B. Account Stated

For purposes of § 936, an "account stated" is "a type of contract where an agreement on a balance owed becomes a new and independent obligation that supercedes and merges the prior contractual obligation." *State of Okla. ex rel. State Ins. Fund v. Accord Human Res., Inc.*, 82 P.3d 1015, 1017-18 (Okla. 2003). In an action to recover on an account stated, "'the agreed balance constitutes a new cause of action and renders unnecessary proof of an original obligation, or

7

promise, of payment by the defendants, if at the time there appears to have been an indebtedness between the parties." *Great Plains Care Center*, 78 P.3d at 89 (quoting *Mayes County Milk Producers Ass'n v. Hunter*, 317 P.2d 736 (Okla. 1957)).  ANEC argues that the Conveyance of NPI constitutes an "account stated" because "[t]he Class 7 Creditors represented by [Ryan] are a group of unsecured creditors who were owed debts by the bankrupt Couba Operating Company.  The aggregate amount due these creditors constitutes a new cause of action which supersedes and merges the antecedent causes of action for the constituent parts."  (ANEC's Reply in Support of Mot. for Atty. Fees 3.)  Thus, ANEC contends that the Conveyance of NPI is an "account stated" because such document represents a settlement of various debts owed to Class 7 Creditors in the Bankruptcy Case.

The Court finds that this action was not one to recover on an "account stated" for purposes of § 936.  The Conveyance of NPI cannot be characterized as an agreement on a "balance owed" that became "a new and independent obligation that supercede[d] and merge[d]" any prior contractual obligations between Class 7 Creditors and ANEC.  *See Accord Human Resources, Inc.*, 82 P.3d at 1017-18.  Instead, the Conveyance of NPI was the result of complex negotiations in the Bankruptcy Case whereby ANEC, a creditor of Couba, agreed to obtain the Leases from Couba and use the Leases to help pay debt owed by Couba to the Class 7 Creditors.  ANEC and Class 7 Creditors did not agree to any particular "balance owed" but rather agreed to a complex formula whereby Class 7 Creditors would receive net profits, if earned, as a result of ANEC's operation of the Leases.  Prior to the bankruptcy proceedings and the Conveyance of NPI, ANEC was not indebted to the Class 7 Creditors.  Therefore, there was no prior agreement between Ryan and ANEC that could have "merged" into a subsequent agreement as to a particular amount of indebtedness.  The facts of this

case are simply too far removed from the common law definition to qualify as an "account stated" for purposes of § 936.[4]

The Motion of Defendant American Natural Energy Corporation for Attorneys' Fees (Doc. 96) is DENIED. Ryan's Motion to Bifurcate Hearing on Defendant's Motion for Attorney's Fees (Doc. 103) is DENIED AS MOOT.

IT IS SO ORDERED this 9th day of July, 2008.

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**

---

[4] Oklahoma case law implies that an action to enforce a settlement agreement is not an action "on an account stated" but is instead an action "to enforce a contract." *See Accord Human Resources, Inc.*, 82 P.3d at 1018; *Edwards v. Walden*, 595 P.2d 445, 447 (Okla. 1979) (holding that action for specific performance of a settlement agreement was not an action on an "account stated") ("Here the pleadings as framed by appellee did not pray for relief upon the ground of an account stated. Rather . . . the trial court awarded [plaintiff] judgment based upon [plaintiff's] prayer for specific performance of the contract."). Therefore, even if the Conveyance of NPI was a more traditional "settlement agreement," it is not even clear that this would qualify as an "account stated."